STATE of Iowa, Appellee,

v.

David Paul HOLTZ, Appellant.

No. 63954.

Supreme Court of Iowa.

Jan. 14, 1981.

Mark H. Rettig of Hines, Pence, Day & Powers, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., Steven M. Foritano, Student Intern, and Mark Mossman, County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, LARSON and SCHULTZ, JJ.

McCORMICK, Justice.

The court of appeals reversed defendant David Paul Holtz's conviction and sentence for second-degree burglary and remanded the case for new trial. The court held that the trial court erred in overruling defendant's motion to suppress evidence seized after a warrantless entry into defendant's motel room. We granted the State's petition for further review. Because we believe the court of appeals was correct, we affirm its decision and remand the case for trial.

In addition to the question relating to admissibility of the evidence seized from the motel room, the appeal presents questions concerning admissibility of testimony regarding observations of an article in a pickup truck occupied by defendant and observations of contents of the motel room made through the window. Defendant also challenges the sufficiency of evidence to support his conviction. He raises other questions which are moot in view of our disposition of the case.

■ The parties have adopted the court of appeals' recital of facts, which is as follows:

At 1:40 a. m. on April 6, 1979, a Benton County police officer observed a red and white Ford pickup truck near the Savetamal Medical Clinic in Belle Plaine, Iowa. Defendant and a male companion were in the vehicle. The officer saw defendant try unsuccessfully to open the front door of the clinic. Defendant then got back into the truck which was driven away. The Belle Plaine chief of police saw the vehicle parked near a tavern and later followed it out of town towards Cedar Rapids, noting it was being driven in an erratic manner. After he radioed to authorities that the truck might contain a drunk driver, the police chief returned to Belle Plaine after 3:00 a. m. and discovered a break-in had occurred at the clinic. He again radioed ahead that the vehicle occupants were to be stopped for questioning regarding the break-in.

Two Cedar Rapids policemen overheard the radio broadcast concerning a red and white pickup and the possibility that the driver was drunk. They discovered the vehicle in a motel parking lot. The officers approached the vehicle, asked the occupant to get out, and noticed a container labeled "Parke-Davis 5 ml. Tetanus Toxoid" in the vehicle. After physically examining the container, and asking the occupant some questions, the officers left without further incident. A short time later, the policemen overheard the broadcast concerning the Belle Plaine break-in and the description of the red and white pickup and recognized that the description matched the vehicle they had seen earlier in the parking lot. Consequently, a team of police officers met at the Red Roof Inn at 3:30 a. m. and were told which room defendant and his companion occupied. At approximately 4:30 a. m., two of the officers went upstairs to defendant's room via an outdoor stairway and walkway, the only means of access to the motel rooms on the second floor. One of the officers notice the drapes in the window of defendant's room were open six to ten inches. Upon looking in, he observed drugs, drug paraphernalia

(which he suspected came from the Belle Plaine Clinic) and defendant, among others. The officer knocked on the door, and when asked who it was, responded "Doug" (defendant's brother) as a ruse to gain entry. After the door was opened, the officers announced their true identity and said they were coming into the room. Without either an arrest or a search warrant, they then arrested defendant for the clinic burglary and seized the drugs and related matter that were [lying] around the room.

Prior to trial, defendant filed a motion to suppress the evidence seized from the motel room, the testimony regarding the container and the testimony concerning the officer's observations through the partially opened drapes. Trial court overruled this motion as well as subsequent motions for directed verdict. The jury found defendant guilty of second degree burglary. After trial court overruled defendant's motion for new trial, defendant timely filed this appeal.

We will discuss additional relevant evidence in addressing the merits of the appeal. Our review of the record bearing on the search and seizure issues is de novo. Sufficiency of the evidence to support conviction is reviewed under the standard delineated in *State v. Robinson*, 288 N.W.2d 337, 338 (Iowa 1980).

I. *Observations of the tetanus-toxoid container.* Defendant attacked the admissibility of testimony concerning the tetanus-toxoid container observed in the pickup truck by the two Cedar Rapids police officers who questioned him in the motel parking lot. When defendant got out of the vehicle at the officers' request, the container rolled off the seat and onto the floor board near the door. Each of the officers picked up the box and examined it but, after doing so, returned it to defendant.

■ Assuming, as defendant contends, he was "seized" within the meaning of U.S. Const. Amend. IV and Iowa Const. art. I, section 8, when the officers requested he get out of the vehicle, we believe the seizure was lawful. The police had been told

a vehicle matching the description of the one involved was being operated by a person who might be intoxicated. They saw the vehicle being driven in an erratic manner just before it stopped in the motel parking lot. When they asked defendant to get out of the vehicle, they had "specific and articulable cause to support a reasonable belief that criminal activity may have occurred." *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980).

Because the initial intrusion was justified, the officers were in a place they had a right to be when they observed the tetanus-toxoid box. They admitted their object in handling it was to see what was in it. One said the box bore the Parke-Davis name and was labeled "tetanus toxoid absorb, 5 milliliters." The other officer said his examination revealed it contained "some sort of tetanus vial."

In contending the officers' testimony concerning their observations should have been excluded, defendant contends the handling of the box was a seizure which was not authorized under the plain view doctrine because the article's incriminating nature was not immediately apparent. *See State v. Davis*, 228 N.W.2d 67, 71 (Iowa 1975). Tetanus toxoid is not a controlled substance, and the officers learned of the article's incriminating nature only when they subsequently heard of its possible connection with the Belle Plaine burglary. We find, however, that the officers were justified in examining the box in the circumstances of this case even though its incriminating nature was not apparent to them.

■ The officers' activity in picking up the box and looking more closely at it was a kind of limited intrusion which is consistent with the requirement of the plain view doctrine that the incriminating nature of an item be immediately apparent before it can be seized. The requirement does not foreclose "some brief perusal or examination" of a suspicious-looking article in order to perceive its relevancy. *United States v. Presler*, 610 F.2d 1206, 1211 (4th Cir. 1979). It was not unreasonable for officers investigating defendant's possible intoxication to

be curious about a box containing a drug which rolled off the seat when defendant got out of the vehicle. Items which ordinarily appear perfectly innocent may take on an incriminating coloration in another context. *United States v. Callabrass*, 607 F.2d 559, 564 (2d Cir. 1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980). The brief inspection of the box which occurred here did not constitute a seizure which must meet the prerequisites of the plain view doctrine.

The trial court did not err in refusing to suppress the testimony relating to the tetanus-toxoid box.

II. *The observations through the motel room window.* Defendant contends the trial court erred in holding the constitutional protections were not infringed by the observations of the arresting officer through the motel room window. The draperies were open wide enough so that a person standing on the common walkway could see into the room.

■ Defendant is right that he had a protected privacy interest in his motel room. *See Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374, 381 (1966); *United States v. Agapito*, 620 F.2d 324, 331 (2d Cir. 1980). However, this expectation is affected by "the element of public or shared property in motel surroundings." *Marullo v. United States*, 328 F.2d 361, 363 (5th Cir.), *cert. denied*, 379 U.S. 850, 85 S.Ct. 93, 13 L.Ed.2d 53 (1964). By leaving the drapes partially open, defendant gave up his right to privacy to the extent a passerby on the common walkway could see into the room. *See Latham v. Sullivan*, 295 N.W.2d 472, 476 (Iowa App. 1980).

The trial court did not err in overruling defendant's motion to suppress testimony regarding the officer's observations.

III. *Evidence seized in the motel room.* Defendant contends the trial court erred in overruling his motion to suppress the evidence seized in the motel room. In reversing on this ground, the court of appeals relied on *Payton v. New York*, 445 U.S. 573,

100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In *Payton*, the Supreme Court held that the fourth amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576, 100 S.Ct. at 1374–75, 63 L.Ed.2d at 644. We previously adopted the same principle under the state and federal constitutions in *State v. Jones*, 274 N.W.2d 273 (Iowa 1979). Although *Payton* was decided subsequent to the occasion involved here, *Jones* was decided approximately two months before this occasion.

■ Warrantless searches and seizures are per se unreasonable unless they come within a recognized exception to the warrant requirement. *State v. Folkens*, 281 N.W.2d 1, 3 (Iowa 1979). Here the State relies on the exception permitting search and seizure incident to a lawful arrest. Thus the validity of the seizure of the evidence in the motel room depends on the legality of the arrest.

The record shows a Benton County sheriff's deputy had radioed information regarding the burglary to one of the arresting officers approximately fifty minutes before the arrest was made. The motel room was kept under surveillance during this period. The room had only one door.

No indication appears that any consideration was given to obtaining an arrest warrant. Nor does the record disclose that the officers thought they were confronted with an emergency which made it impractical to seek a warrant. In resisting the motion to suppress, however, the State contended exigent circumstances excused the failure to obtain an arrest warrant. The *Jones-Payton* principle is subject to this exception. *See Payton*, 445 U.S. at 582, 100 S.Ct. at 1378, 63 L.Ed.2d at 648.

■ A warrantless entry is presumptively unreasonable. Thus the burden was on the State to justify the entry in this case under the exception alleged. *See United States v. Selberg*, 630 F.2d 1292 (8th Cir. 1980). To meet this burden, the State was required to show that the exigencies of the

situation were so compelling that the warrantless entry was objectively reasonable under the applicable constitutional protections. *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 191, 93 L.Ed. 153, 158 (1948). Exigent circumstances usually include "danger of violence and injury to the officers or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed." *State v. Jackson*, 210 N.W.2d 537, 540 (Iowa 1973).

■ A finding of exigency for a warrantless entry to make an arrest requires consideration of whether:
  (1) a grave offense is involved;
  (2) the suspect is reasonably believed to be armed;
  (3) there is probable cause to believe the suspect committed the crime;
  (4) there is strong reason to believe he is on the premises;
  (5) there is a strong likelihood of escape if not apprehended; and
  (6) the entry, though not consented to, is peaceable.
*Jones*, 274 N.W.2d at 275–76. These criteria are important but not all-inclusive. Nor do all of them have to be satisfied before an exigency can be found. *Id.* The ultimate issue is whether an emergency or urgent need for the warrantless entry existed. A warrant was required unless " 'an immediate major crisis in the performance of duty' " afforded neither time nor opportunity to apply to a magistrate. *Dorman v. United States*, 435 F.2d 385, 391 (D.C.Cir. 1970).

■ Here the officers decided to make the arrest fifteen or twenty minutes before going to the second floor of the motel to carry it out and approximately thirty minutes after receiving the information from the Benton County deputy. It is true the basis for the arrest was strengthened by the observations through the window of the room immediately prior to the entry, but this additional information does not excuse the failure to take the earlier information to a magistrate when the decision to arrest was made.

Although burglary is a serious crime, the offense involved here did not suggest a danger to life. The officers had no reason to believe defendant was armed. Their contacts with him earlier in the night had been peaceful. Although they had probable cause to believe he committed the crime and strong reason to believe he was in the motel room, they had no basis for believing he would escape if not apprehended. Because they had the only door to the room under surveillance, they could act quickly to arrest defendant if he attempted to leave while a warrant was being sought.

■ The State asserts defendant might have destroyed the evidence during the interim. Exigent circumstances exist when contraband is threatened with immediate removal or destruction. *United States v. Allison*, No. 79–2479 (15 D.C.Cir. filed Oct. 3, 1980). However, in this case the officers knew the contraband consisted of a large quantity of materials including books, medical instruments, bottles, syringes and boxes, as well as prescription drugs. These materials could not have been secretly removed, and they could not have been easily destroyed. Moreover, the officers had no reason to believe defendant was aware of their presence. They displayed no sense of urgency during the period the room was under surveillance.

■ The State points out that the officer who looked in the window just prior to the entry testified it looked like defendant "was getting ready to inject something into his body." Of course, the officer also saw a large quantity of contraband lying around the room, including containers of drugs and larger articles. In the circumstances shown, defendant's possible use of a drug did not create an urgent need for the officers to enter the room to prevent destruction of evidence. Exigency cannot be found on this basis. *See Johnson v. United States*, 333 U.S. 10, 14-15, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440–41 (1948) (use of opium); *State v. Ahern*, 227 N.W.2d 164, 167–68 (Iowa 1975) (use of marijuana). *See also Latham*, 295 N.W.2d at 477–78.

We do not believe the State met its burden to overcome the presumptive requirement of a warrant. Unfortunately it merely appears the officers were unaware of the requirement.

The trial court erred in overruling the motion to suppress the evidence obtained in the search of the room.

IV. *Sufficiency of the evidence.* Because the case must be reversed and remanded for new trial, other contentions of defendant are moot. However, one of his additional arguments is that the trial court erred in overruling his motion for directed verdict at the conclusion of the evidence. He alleged the evidence on the essential elements of the offense was not substantial, even when the evidence seized in the motel room was considered. If this argument is meritorious, defendant should have been acquitted and a new trial would not be warranted. Therefore we must determine whether the court erred as claimed.

The elements of a burglary charge under section 713.1, The Code, were discussed in *State v. Sangster*, 299 N.W.2d 661, 662 (Iowa 1980), and that discussion need not be repeated here. Under the whole record, we find each element was supported by substantial evidence in this case. Although defendant contends otherwise, a reasonable doubt was not necessarily created by his defense that he purchased the contraband for $20 from a stranger in a Belle Plaine bar.

We do not decide whether the State would have had sufficient evidence for jury submission of the case if the evidence from the motel room had been excluded. *See State v. Fingert*, 298 N.W.2d 249, 256 (Iowa 1980).

We affirm the decision of the court of appeals and remand the case for trial.

DECISION OF COURT OF APPEALS AFFIRMED AND CASE REMANDED.